UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                        :

HARRY R. BAPTISTE,                :   **<u>ORDER GRANTING IN PART</u>**

                                        :   **<u>AND DENYING IN PART</u>**

                    Plaintiff,     :   **<u>DEFENDANTS' MOTIONS TO</u>**

                                          :   **<u>DISMISS</u>**

         -against-             :

                                          :   09 Civ. 5523 (AKH)

WARDEN AT OTTISVILLE, FCI NEW YORK;   :
DR. D. SOMMERS, CLINICAL DIRECTOR;     :
DR. M. WHITE, M.D.; ORANGE REGIONAL    :
MEDICAL STAFF CENTER DIRECTOR; JOHN   :
and JANE DOE,                       :

                                          :

                    Defendants.     :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

          Plaintiff Harry Baptiste, a federal prisoner proceeding *pro se* and *in forma*

*pauperis*, brings this action pursuant to <u>Bivens v. Six Unknown Named Agents of Fed.</u>

<u>Bureau of Narcotics</u>, 403 U.S. 388 (1971), and the Federal Tort Claims Act.  Baptiste

claims that Defendants Warden at Ottisville ("Warden Killian"); Dr. D. Sommers,

Clinical Director ("Dr. Sommer"); Dr. M. White, M.D. ("Dr. White"); Orange Regional

Medical Staff Center Director ("Director"); and John and Jane Doe violated his Eighth

Amendment right to adequate medical care by improperly diagnosing and treating his

lung condition.  Baptiste sues all Defendants in both their official and individual

capacities, seeking $3 million in compensatory damages and $6 million in punitive

damages.

          Defendants Killian and Sommer, both employed by the Federal

Correctional Institution in Otisville, New York ("FCI Otisville") and represented by the

U.S. Attorney's Office, move for a partial dismissal of the complaint under Rule 12(b)(6)

of the Federal Rules of Civil Procedure.[1]  Defendant White, represented by private

counsel, moves for a dismissal of the complaint pursuant to Rules 12(b)(1), 12(b)(4),

12(b)(5), and 12(b)(6), or in the alternative, for summary judgment pursuant to Rule 56.

For the reasons set forth below, I grant in part and deny in part Defendants' motions, and

direct Baptiste to file an amended complaint within 60 days of the date of this Order.

## I.   BACKGROUND

For purposes of deciding Defendants' motions to dismiss, the Court

assumes that the factual allegations in the complaint, its attached documents,[2] and

Baptiste's "Rebuttal of Defendant's Response" are true.[3]

Harry Baptiste, currently an inmate at the Federal Medical Center in

Rochester, Minnesota ("FMC Rochester"), has been in the custody of the Federal Bureau

---

[1]     The Complaint incorrectly identifies Dr. Sommer as "Dr. Sommers" and FCI Otisville as "FCI Ottisville."

[2]     Though they are not labeled as exhibits, I will treat the documents attached to Baptiste's complaint as one sequentially paginated exhibit.

[3]     The Court may consider documents referenced by the complaint without needing to convert Defendants' motions to dismiss to motions for summary judgment.  See Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).  Defendants correctly note that Baptiste's opposition papers contain factual allegations not included in the complaint.  Given the latitude afforded pro se litigants, I accept these allegations as proposed amendments to his complaint.  See Ajilani v. Chertoff, 545 F.3d 229, 235 (2d Cir. 2008); Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (internal citations omitted).

of Prisons since November 2000.  From November 2000 until his May 2006 transfer to

FMC Rochester, Baptiste was incarcerated at FCI Otisville.[4]

On February 6, 2005, Baptiste fell ill.  He requested, but for a month was

denied, an x-ray exam.  On March 11, 2005, Baptiste underwent a radiologic study at

Orange Regional Medical Center ("Hospital"), a medical facility outside FCI Otisville, in

order to diagnose his breathing and lung problems.  Dr. White, the physician who

interpreted the exam at the Hospital, reported to FCI Otisville a "differential diagnosis"[5]

that "includes sarcoidosis,[6] diffuse bronchopneumonia, lymphoma, pulmonary interstitial

infiltrates with eosinophilia . . . among many other possibilities."  Based on this

diagnosis, Dr. Sommer, Clinical Director of FCI Otisville's Medical Center, began a

treatment plan that included high doses of Prednisone.[7]  Baptiste complained frequently

of joint pain, weight gain, partial blindness, and other health problems while on the drug

therapy.

---

[4]      Although Baptiste states that he was sent to FMC Rochester in May 2008,
medical records and claim forms annexed to the complaint indicate the transfer occurred
in May 2006.

[5]      A differential diagnosis is a patient-specific process of elimination used to
determine the most likely cause of a set of signs and symptoms from a list of possible
diseases or conditions.  Dorland's Illustrated Medical Dictionary 514 (31st ed. 2007).

[6]      Sarcoidosis is the subject of the claims and arguments described later in this
order.  Sarcoidosis is a disease, currently of unknown etiology, characterized by
inflammation that can appear in almost any organ of the body.  Id. at 1693.

[7]      Prednisone is "a synthetic glucorticoid derived from cortisone, administered
orally as an anti-inflammatory and immunosuppressant in a wide variety of disorders."
Id. at 1531.

Beginning in late 2005, Baptiste visited a pulmonologist at Crystal Run Health Center four times.[8]  The pulmonologist informed Baptiste and Dr. Sommer that "a [lung] biopsy was needed to make sure [Baptiste] was diagnosed with sarcoidosis."  Compl. at 4.  Dr. Sommer denied the request and Warden Killian told Baptiste that "they were not going to do the biopsy."  Rebuttal of Defendant's Response at 8-9.  FCI Otisville's medical staff continued to treat Baptiste's health problems, which were "asthma, hyperlipidemia, BPH, prostate syndrome, and sarcoidosis."  Compl. Ex. at 19.

In May 2006, Baptiste was transferred to FMC Rochester to improve the available medical care.  After reviewing Baptiste's medical records, Dr. Tran, a physician at FMC Rochester, noted that Baptiste had "significant bilateral pulmonary disease, which was misdiagnosed as sarcoidosis."  Compl. Ex. at 21.  Physicians at the Mayo Clinic conducted a lung biopsy on August 27, 2007 and sent a letter informing Baptiste that his "final diagnoses" consisted of "interstitial lung disease likely NSIP associated with connective tissue disease, connective tissue disease, and microscopic hematuria."  Compl. Ex. at 15.  Baptiste claims that he did not become "fully aware that he had been misdiagnos[ed]" until a February 8, 2008 appointment with Dr. Tran.

## II.   **PROCEDURAL HISTORY**

On February 28, 2008, Baptiste filed a Bureau of Prisons Request for Administrative Remedy, asserting that Warden Killian and the medical staff of FCI Otisville delayed his treatment in February 2005 and administered high doses of Prednisone based on a misdiagnosis.  The request was rejected at all stages of the

---

[8]     While the complaint states that Baptiste went to Crystal Run Health Center in December 2006, he was incarcerated at FMC Rochester by that point.  Lab results from "Crystal Run Healthcare LLP," dated December 21, 2005, suggest that the visits actually began in December 2005.  Compl. Ex. at 14.

administrative review process on the ground that it was not filed within "twenty days of the event complained about." Compl. Ex. at 6-8.

On March 3, 2008, Baptiste filed an administrative tort claim, again contesting the adequacy of the medical care he received. On September 2, 2008, the Northeast Regional Office of the Bureau of Prisons denied his claim, finding that Baptiste received proper and timely medical care at FCI Otisville.

On February 9, 2009, Baptiste filed his complaint in the Northern District of New York. The matter was subsequently transferred to this Court. As a federal prisoner proceeding *in forma pauperis*, Baptiste relied on the U.S Marshals Service to serve Defendants. The USMS successfully served Warden Killian and Dr. Sommer. Although Baptiste provided the USMS with the respective addresses of Dr. White and the Director of Orange Regional Medical Center, neither was properly served. The Director has not yet entered an appearance in the action. Dr. White received actual notice of suit and has entered an appearance.

All defendants who have entered an appearance – Defendants Sommer, Killian, and White – move to dismiss the complaint. Defendants Sommer and Killian move to dismiss Baptiste's <u>Bivens</u> claims against them under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Sommer and Killian argue that Baptiste failed to adequately plead the elements of an Eighth Amendment deliberate indifference claim. They also move to substitute the United States as the defendant in place of Sommer and Killian with regard to Baptiste's claims under the FTCA.

Defendant White moves to dismiss the complaint on several grounds. First, he moves to dismiss under Rule 12(b)(4) for insufficient process and under Rule

12(b)(5) for insufficient service of process.  He argues that he was not served in accordance with Rule 4(e), as he received only the copy of the summons and complaint that had been served care of the Hospital, where he no longer works.

Because Baptiste is an incarcerated *pro se* litigant with *in forma pauperis* status, I deny White's motion to dismiss the complaint on the grounds of defective service of process.  See Romandette v. Weetabix, 807 F.2d 309, 311 (2d Cir. 1986) (finding that where incarcerated *pro se* plaintiff is entitled to rely on USMS to effect proper service and defendant has received actual notice of action, service requirements under Rule 4 are liberally construed).

Next, Defendant White contends that the complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim under <u>Bivens</u> and the FTCA.  Defendant White has alternatively moved for summary judgment and, to that end, has submitted a declaration and Local Rule 56.1 statement.  In light of Baptiste's *pro se* and *in forma pauperis* status and the lack of any discovery, I decline to convert his motion to one for summary judgment.  See Perez v. Hawk, 302 F. Supp. 2d 9, 16 (E.D.N.Y. 2004) (declining to convert Rule 12(b)(6) motion to one for summary judgment where plaintiff was *pro se* prisoner raising <u>Bivens</u> claims).

### III.   STANDARD OF REVIEW

#### a.   Lack of Subject Matter Jurisdiction

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The

plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003). In deciding a motion to dismiss for lack of subject matter jurisdiction, the court may refer to matters outside the pleadings to determine whether subject matter jurisdiction exists. Kamen v. AT&T Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

**b.      Failure to State a Claim**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. The court must "accept as true all of the factual allegations contained in the complaint," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2002), and "draw all reasonable inferences in the plaintiff's favor," Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007) (internal citations omitted). The Court must interpret the pleadings of a *pro se* plaintiff "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

**c.      Failure to Exhaust**

The Prison Litigation Reform Act bars an inmate from bringing an action in federal court regarding prison conditions unless he has exhausted all administrative avenues for relief within the prison system. 42 U.S.C. § 1997e(a); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) (noting that PLRA exhaustion requirement applies to federal prisoners suing under Bivens). "[Section] 1997e(a) *requires* exhaustion of available administrative remedies *before* inmate-plaintiffs may bring their federal claims

to court *at all*." Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (emphasis in original) (internal citations omitted), overruled on other grounds by Porter, 534 U.S. at 532. Moreover, the PLRA requires "proper exhaustion," mandating "compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Therefore, an inmate has failed to satisfy the exhaustion requirement by filing an untimely remedy request or appeal. Id. at 83.

The Second Circuit has held that an inmate's failure to exhaust may be excused if: 1) administrative remedies were unavailable; 2) defendants are estopped from raising non-exhaustion as a defense; or 3) special circumstances justify the inmate's non-compliance with administrative procedural requirements. Hemphill v. New York, 380 F.3d 680, 686-91 (2d Cir. 2004).

## IV.   DISCUSSION

### a.   Claims Against John and Jane Doe

Baptiste names "John and Jane Doe" as defendants, but does not refer to either of these unnamed individuals in his complaint, its supporting documents, or his opposition to Defendants' motions. As the complaint does not mention these individuals, much less their personal involvement in any violation of Baptiste's constitutional rights, I dismiss the claims against them. See Perez, 302 F. Supp. 2d at 19; Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."). However, as neither unnamed defendant has been served

or come before the Court, the Court grants Baptiste leave to replead his claims against

these individuals.  See Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009).

      **b.**     **Eighth Amendment Claims under <u>Bivens</u>**

      As the analog to 42 U.S.C. § 1983, <u>Bivens</u> authorizes suits for money

damages against federal officers who violate an individual's constitutional rights while

acting under the color of federal law.  403 U.S. at 396.  "[T]he treatment a prisoner

receives in prison and the conditions under which he is confined are subject to scrutiny

under the Eighth Amendment."  <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993).

"Deliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."

<u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 173

(1976)).

      i.     Deliberate Indifference Standard

      To state a <u>Bivens</u> claim of inadequate medical care in violation of the

Eighth Amendment, the plaintiff must satisfy the two-pronged deliberate indifference

standard.  <u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996).  Under the objective

prong, the alleged deprivation must be "sufficiently serious."  <u>Wilson v. Seiter</u>, 501 U.S.

294, 298 (1991).  The Second Circuit has held that "a sufficiently serious deprivation . . .

is a condition of urgency, one that may produce death, degeneration, or extreme pain."

<u>Morales v. Mackalm</u>, 278 F.3d 126, 132 (2d Cir. 2002).  Under the subjective prong, the

plaintiff must demonstrate that the defendant acted with "a sufficiently culpable state of

mind."  <u>Wilson</u>, 501 U.S. at 298.  A prison official displays deliberate indifference when

the official "knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  While deliberate indifference is a "state of mind that is the equivalent of criminal recklessness," Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (internal citations omitted), "medical malpractice does not become a constitutional violation merely because the victim is a prisoner," Estelle, 429 U.S. at 106.

      ii.      Claims Against Federal Defendants in Their Official Capacities

Baptiste raises Bivens claims against all Defendants in both their individual and official capacities.  "Because an action against a federal agency or federal officers acting in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (citing F.D.I.C. v. Meyer, 510 U.S. 471 (1994)).  Here, the United States has not consented to a Bivens suit against any of the federal Defendants in their official capacities.  As such consent is a prerequisite to suit against the United States, the Court sua sponte dismisses for lack of subject matter jurisdiction all Bivens claims against the federal Defendants in their official capacities.  See United States v. Mitchell, 463 U.S. 206, 212 (1983).

      iii.      Claims Against Dr. White and Orange Regional Medical Staff Center Director

Baptiste claims that Dr. White and the Director provided him with constitutionally inadequate medical care when Dr. White "misdiagnosed plaintiff['s] medical condition as being [sarcoidosis]."  Compl. at 5.  Dr. White argues that he is not liable for constitutional violations under Bivens because he was not acting under the

color of federal law when he interpreted Baptiste's radiologic study.  Dr. White has

submitted an affidavit attesting that, at all relevant times, he was employed as a

radiologist by Radiologic Associates P.C., a professional practice group.  As an employee

of the practice group, he worked at the Hospital, a private medical facility, as an

attending physician with staff privileges.  White Affidavit at 2.

        Bivens does not provide a cause of action against purely private conduct.

See Rendall-Baker v. Kohn, 457 U.S. 830, 838-42 (1982).  However, private conduct that

is "fairly attributable" to a government actor may serve as the basis for a Bivens civil

rights claim.  Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 937 (1982); see also

Commodari v. Long Island Univ., 89 F. Supp. 2d 353, 373 n.10 (E.D.N.Y. 2000) ("For

the purposes of determining whether a private party acts under color of federal law,

courts apply the same principles as . . . they do in determining whether a private party

acts under color of state law in a § 1983 action.").  In the context of physicians who treat

prison inmates, "the physician's function within the state system, not the precise terms of

his employment, . . . determines whether his actions can be fairly attributed to the State."

West v. Atkins, 487 U.S. 42, 55-56 (1988).

        In West, the court found that a private physician, under contract with the

state to provide medical services to state inmates within a prison hospital, was liable

under § 1983.  Here, Dr. White attests that he did not directly contract with the Bureau of

Prisons nor did he ever treat inmates outside the private hospital setting.  While this

distinguishes his circumstances from West, the fact remains that his practice group had an

ongoing relationship with the Hospital that entailed providing consultation services to

Baptiste, a federal inmate.  However, the record offers a paucity of information about the

Director and the relationship between the Hospital and Bureau of Prisons.  Since

determining state action is "necessarily a fact-bound inquiry," Brentwood Acad. v. Tenn.

Secondary Sch. Athletic Ass'n, 531 U.S. 288, 298 (2001), unsuited to resolution on a

motion to dismiss, I decline to dismiss Baptiste's Bivens claims against Dr. White and the

Director for failure to meet the state action requirement.

> However, the Bivens claims against Dr. White and the Director must be
dismissed because Baptiste has failed to satisfy either prong of the deliberate indifference
standard.  Dr. White's diagnostic report, wherein he noted that the "[d]ifferential
diagnosis is quite broad and includes sarcoidosis . . . among many other possibilities,"
Compl. Ex. at 12-13, belies Baptiste's claim that Dr. White "misdiagnosed" his
condition.  Rather than arriving at a definitive diagnosis, Dr. White "[i]dentified the most
likely cause[s] of a set of signs and symptoms from a list of possible causes." Ruggiero
v. Lambert, 424 F.3d 249, 254 (2d Cir. 2005).  Although Baptiste characterizes this as a
"misdiagnosis" in violation of the Eighth Amendment, "the tenet that a court must accept
as true all of the allegations contained in the complaint is inapplicable to legal
conclusions." Iqbal, 129 S. Ct. at 1950.  Since Dr. White did not deprive Baptiste of
constitutionally adequate medical care, he in turn displayed no deliberate indifference to
Baptiste's medical needs.  As Baptiste has failed to satisfy either prong of the deliberate
indifference standard, his Bivens claim against Dr. White is dismissed.

> Baptiste also fails to state a Bivens claim against the Director.  Even under
a liberal reading of his complaint and opposition papers, Baptiste appears to base his
claim against the Director entirely on supervisory liability for Dr. White's alleged
misdiagnosis.  However, "the doctrine of *respondeat superior* does not apply in Bivens

actions." Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006).  Moreover, the Court

finds that the differential diagnosis did not constitute constitutionally inadequate medical

care.  Accordingly, Baptiste's Bivens claim against the Director is dismissed.

> iv.        Claims Against Dr. Sommer and Warden Killian

Baptiste alleges that Dr. Sommer's refusal to order an x-ray exam and

reliance on the alleged misdiagnosis, as well as Dr. Sommer and Warden Killian's refusal

to order a lung biopsy, constituted deliberate indifference to his serious medical needs.

> 1.        Refusal to Order X-rays

Baptiste alleges that, in February 2005, Dr. Sommer denied his request for

an x-ray exam.  Compl. at 5.  Any claims arising from this alleged refusal must be

dismissed for failure to properly exhaust administrative remedies.

The PLRA's "proper exhaustion" requirement mandates that an inmate-

plaintiff comply with the procedural rules of the prison facility's internal administrative

remedy process before filing suit in federal court.  Woodford, 548 U.S. at 90-91.  The

Bureau of Prisons has established a tiered administrative remedy procedure whereby an

inmate may challenge any aspect of his imprisonment.  28 C.F.R. §§ 542.10-542.19.  The

inmate must first present his grievance to staff as a means of informally resolving the

dispute.  § 542.13(a).  If the dispute remains unresolved, the inmate may file a formal

Request for Administrative Remedy with the prison warden "within twenty calendar days

following the date on which the basis for the Request occurred."  § 542.14(a).  An

extension may be given if the inmate provides a valid reason for any delay in filing the

request.  § 542.14(b).  If dissatisfied with the warden's response, the inmate may submit

an appeal to the Regional Director.  § 542.15(a).  If dissatisfied with the Regional

Director's response, the inmate may submit an appeal to the Central Office of the Bureau of Prison's General Counsel.  Id.  An administrative appeal is deemed exhausted when it has been reviewed on the merits by the Central Office.  Id.

On February 8, 2008, Baptiste filed his Request for Administrative Remedy, claiming that Dr. Sommer delayed treating him in February 2005 and administered Prednisone based on Dr. White's alleged misdiagnosis.  Compl. Ex. at 9. His request was denied because it was not received within "20 days of the event complained about."  Compl. Ex. at 8.  Baptiste's subsequent appeals, including his appeal to the Central Office, were denied on the same grounds.  Compl. Ex. at 6.

Here, Baptiste filed his initial relief request nearly three years after Dr. Sommer allegedly refused his request for x-rays.  Baptiste has neither offered a valid reason for the delay nor sought application of the exceptions to exhaustion, identified in Hemphill as: 1) unavailability of administrative remedies, 2) estoppel, and 3) special circumstances.  380 F.3d at 686-91.  Moreover, he makes no allegation suggesting that his ability to timely file relief requests was in any way impaired, indicating that none of the Hemphill exceptions would apply.  Baptiste's untimely requests denied the Bureau of Prisons "fair opportunity to consider the grievance."  Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007).  Accordingly, Baptiste's claims related to the denial of x-rays are dismissed for failure to comply with the PLRA's proper exhaustion requirement.

2.      Refusal to Order Lung Biopsy

Next, Baptiste asserts that Dr. Sommer and Warden Killian displayed deliberate indifference to his medical needs by refusing to order a lung biopsy that allegedly would have "reached the correct diagnosis."  Rebuttal of Defendant's Response

at 7.  Again, Baptiste's failure to exhaust administrative remedies has procedurally defaulted this claim.

Baptiste alleges that the pulmonologist at Crystal Run Health Center sought to perform a lung biopsy to confirm that Baptiste's condition was indeed sarcoidosis.  Although he does not reference the date on which this request was made, Baptiste's submissions indicate that it occurred sometime between December 2005, when he first saw the specialist, and May 2006, when he moved to FMC Rochester.  He further alleges that "repeatedly, the Warden verbally told Baptiste that they were not going to approve the biopsy."  Id. at 8-9.  This demonstrates that, at the time in question, Baptiste was fully aware that FCI Otisville's medical staff had refused to order the biopsy.  However, he failed to file a single administrative remedy request contesting the denial.

While his 2008 Request for Administrative Remedy challenges more generally the medical staff's failure to correctly diagnose him, it does not refer at all to the more precise issue regarding the biopsy.  To the extent that Baptiste asserts that his 2008 request encompasses his grievance about the biopsy, such a request for relief does not reasonably "alert the prison to the nature of the wrong for which redress is sought." Thomas v. Metropolitan Correction Center, No. 09 Civ. 1769 (PGG), 2010 WL 2507041, at *7 (S.D.N.Y. June 21, 2010) (quoting Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).  Because Baptiste failed to exhaust his administrative remedies, his claims regarding the denial of the lung biopsy are dismissed.

3.      Failure to Properly Diagnose and Administration of Prednisone

Baptiste also raises the more general claim that Dr. Sommer's failure to properly diagnose him evinced deliberate indifference to his serious medical needs.

Baptiste alleges that his current health problems, which include joint pain and partial blindness, arose not from his lung condition, but rather, from the Prednisone that Dr. Sommer administered to treat a disease that he did not have.

Defendants Sommer and Killian first argue that Baptiste's claim should be dismissed for failure to comply with the PLRA's exhaustion requirement. They correctly note that his February 28, 2008 Request for Administrative Remedy, wherein he challenged the alleged misdiagnosis, was rejected for falling outside the twenty-day grievance period. However, in his appeal to the Regional Director, Baptiste argued that his request should be considered timely because he did not know that he had been misdiagnosed until a February 8, 2008 appointment with Dr. Tran. The administrative remedy forms attached to the complaint do not indicate whether these circumstances were taken into account in his subsequent appeals. The forms also do not indicate whether the finding, that his request was untimely, stemmed primarily from his clearly late grievance regarding the denial of x-rays in February 2005.

Defendants Sommer and Killian challenge Baptiste's assertion that he did not discover the misdiagnosis until February 2008. They argue that his "plea" to Warden Killian for the biopsy is evidence that he was keenly aware, while still incarcerated at FCI Otisville, that his diagnosis was not certain. Rebuttal of Defendant's Response at 8. While this may be true, Baptiste may have remained unaware until February 2008 that his health problems stemmed not from his lung condition, but rather, from his prolonged intake of Prednisone. While this matter may be easily resolved with some initial discovery, it is not disposed to resolution at this stage. "[Drawing] all reasonable

inferences in the plaintiff's favor," Kassner, 496 F.3d at 237, I decline to dismiss Baptiste's claims regarding the misdiagnosis for failure to exhaust.

As to the objective prong of the deliberate indifference standard, Baptiste claims that a host of side effects of the Prednisone, which include partial blindness and limited mobility, have shortened his life expectancy and require surgery. For purposes of deciding Defendants' motions to dismiss, these allegations plausibly show that a "sufficiently serious" constitutional deprivation occurred. Wilson, 501 U.S. at 298; see also Chance v. Armstrong, 143 F.3d 698, 702-03 (2d Cir. 1998) (noting that relevant factors to consider when determining if serious medical condition exists include "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As against Dr. Sommer, Baptiste has satisfied the deliberate indifference standard's subjective prong. The subjective prong requires a showing that the defendant knew of and disregarded an excessive risk to the inmate-plaintiff's safety. Farmer, 511 U.S. at 837. While "mere disagreement in treatment [does] not amount to an Eighth Amendment violation," Brown v. McElroy, 160 F. Supp. 2d 699, 705-706 (S.D.N.Y. 2001), Baptiste has adequately alleged that Dr. Sommer possessed a "sufficiently culpable state of mind," Wilson, 501 U.S. at 298. He claims that when she received Dr. White's differential diagnosis, Dr. Sommer became subjectively aware that sarcoidosis was only one of many possible causes of his breathing problems. Baptiste further alleges that, despite knowing that Dr. White had issued a broad differential diagnosis that included pneumonia and lymphoma, Dr. Sommer watched Baptiste endure "pain and suffering [and] loss of eyesight," instead of discontinuing the Prednisone therapy and

17

performing additional tests to arrive at a more conclusive diagnosis. Rebuttal of Defendant's Response at 11. These allegations are sufficiently plausible to survive a motion to dismiss. See Rivera v. Fed. Bureau of Prisons, No. 08 Civ. 5590 (SAS), 2009 WL 585828, at *4-*5 (S.D.N.Y. Mar. 5, 2009); Candelaria v. Erickson, No. 01 Civ. 8594 (LTS), 2005 WL 1529566, at *6 (S.D.N.Y. June 28, 2005) (holding that plaintiff satisfied subjective prong by alleging that defendants were aware that misdiagnosis may have occurred but failed to take additional diagnostic measures). Accordingly, the Court denies Defendant Sommer's motion to dismiss as to this claim.

However, Baptiste fails to satisfy the subjective prong with regard to Warden Killian. Deliberate indifference claims require a showing that the defendant was personally involved in the constitutional violation. Thomas, 470 F.3d at 496. A supervisory defendant's liability attaches only if he: 1) directly participated in the constitutional violation; 2) failed to remedy the violation after learning of it through a report or appeal; 3) created a custom or policy fostering the violation or allowing the custom or policy to continue after learning of it; 4) was grossly negligent in supervising the subordinates who caused the violation; or 5) failed to act on information indicating that constitutional violations were occurring. Id. at 496-97.

Baptiste's sole factual allegation regarding Warden Killian – that she verbally denied his biopsy request – is insufficient to establish her personal involvement. "A prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment to prisoners and cannot be held to have been personally involved if he does so." Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002). Moreover, his allegations do not satisfy any of the factors

18

used to establish supervisory liability.  First, Baptiste has not alleged that Warden Killian directly participated in Baptiste's medical care.  Nor do his allegations suggest that Warden Killian instituted a custom or policy of inadequate medical care or that she was grossly negligent in supervising the medical staff.  Finally, Baptiste's conversation with Warden Killian about the biopsy request is too informal to be considered a report.  See Rivera, 2009 WL 585828, at *5.  Therefore, Baptiste's claim against Warden Killian, regarding the failure of FCI Otisville's medical staff to properly diagnose and treat him, is dismissed.

###         c.        Claims Under the Federal Tort Claims Act

The FTCA is a limited waiver of the United States' sovereign immunity and permits common law tort suits against the federal government.  United States v. Mitchell, 445 U.S. 535, 538 (1980).  The FTCA provides, in relevant part, that a suit against the United States is the exclusive remedy for injury "resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1).

The FTCA precludes tort suits against federal agencies and "makes the only proper federal institutional defendant in such an action the United States."  Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) (citing Rivera v. United States, 928 F.2d 592, 609 (2d Cir. 1991)).  The FTCA similarly provides government employees acting within the scope of their employment with absolute immunity from suit.  Rivera, 928 F.2d at 608-09.  Whether an employee is "acting within the scope of his office of employment at the time of the incident out of which the claim arose" is determined by certification of the Attorney General.  § 2679(d)(2).  The U.S. Attorney for the district

where the action is brought is authorized to make certification on behalf of the Attorney General.  28 C.F.R. § 15.4.  Upon such certification, the United States "shall be substituted as the party defendant."  § 2679(d)(1).

As the FTCA precludes tort suits against federal agencies, Rivera, 928 F.2d at 609, I deny Baptiste's request, made in his opposition papers, to add the Bureau of Prisons as an additional defendant to his FTCA claims.  Baptiste's FTCA claims against Defendants Sommer and Killian are similarly dismissed for lack of subject matter jurisdiction.  See id. at 608-09.  The U.S. Attorney for the Southern District of New York has certified that Defendants Sommer and Killian were acting within the scope of their employment at the relevant times alleged in the complaint.  Certification of Preet Bharara at 1 (Oct. 27, 2009).  Accordingly, the Court grants Defendants' motion to substitute the United States as the party defendant in place of Defendants Sommer and Killian.

To the extent that Baptiste raises FTCA claims against Dr. White or the Orange Regional Medical Staff Center Director, such claims are dismissed for lack of subject matter jurisdiction.  The FTCA's limited waiver of sovereign immunity extends only to federal agencies and federal employees acting within the scope of their employment.  Independent contractors generally do not fall within the definition of "employee of the government," as set forth in § 2671.  See Logue v. United States, 412 U.S. 521, 527-28 (holding that contractor is considered government employee only if the government "control[s] the detailed physical performance of the contract"); Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990) (holding that private physicians contracted with Federal Aviation Administration were not government employees within meaning of FTCA); Gibbons v. Fronton, 533 F. Supp. 2d 449, 453 (S.D.N.Y. 2008) (holding that

private hospital physicians contracted with Department of Veterans Affairs were not employees of federal government within meaning of FTCA).

As Baptiste has made no factual allegations that counter this "presumption of independence," Watts v. U.S. Fed. Bureau of Prisons, No. 9:07 Civ. 773 (DNH), 2009 WL 81285, at *10 (N.D.N.Y. Jan. 9, 2009), the Court dismisses any FTCA claims raised against Dr. White and the Director.  However, Baptiste is granted leave to amend his complaint to assert state law negligence or medical malpractice claims against Dr. White and the Director.  As certain federal claims regarding Baptiste's diagnosis and treatment remain, the Court may exercise supplemental jurisdiction over any state tort claims that Baptiste may raise.  28 U.S.C. § 1367(a); see also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966) (holding that district court may exercise supplemental jurisdiction over state law claims when federal claim vests court with subject matter jurisdiction and state and federal claims "derive from a common nucleus of operative fact").

## V.    CONCLUSION

For the reasons stated above, Defendants' motions to dismiss the complaint are granted in part and denied in part.  Defendants Killian and Sommer's motion to dismiss is granted on all Bivens claims with the exception of the claim that Defendant Sommer displayed deliberate indifference by failing to properly diagnose and treat Plaintiff.  Defendant White's motion to dismiss all Bivens and FTCA claims against him is granted.

The Court grants Plaintiff leave to file an amended complaint.  Fed. R. Civ. P. 15(a) (providing that courts should freely give leave to amend when justice so

requires). If Plaintiff wishes to file an amended complaint, he is ordered to do so within

60 days, in a manner consistent with this Order, and inclusive of the new factual

allegations made in his "Rebuttal of Defendant's Response." The Court advises Plaintiff

to consult with the Court's Pro Se Office for assistance in determining appropriate

amendments consistent with this Order. The Court directs Plaintiff to serve, through the

U.S. Marshals Service, the amended complaint on all named Defendants.

> The Clerk shall mark the motions (Doc. Nos. 15 and 18) terminated.

> SO ORDERED.

Dated:     August /𝒱, 2010
           New York, New York

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge